IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | | |
|---|---|---|
| C.P. and J.D., individually and on behalf of their minor child, M.D., | ) | CV. NO. 09-00393 DAE-BMK |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| vs. | ) | |
| | ) | |
| STATE OF HAWAII, DEPARTMENT OF EDUCATION; and KATHRYN MATAYOSHI, in her official capacity as Interim Superintendent of the Hawaii Department of Education, State of Hawaii, | ) | |
| | ) | |
| Defendants. | ) | |
| _____ | ) | |

ORDER AFFIRMING ADMINISTRATIVE HEARINGS OFFICER'S FINDINGS
OF FACTS, CONCLUSIONS OF LAW AND DECISION

On May 12, 2010, the Court heard Plaintiff's appeal of a decision

rendered by an administrative hearings officer concerning the appropriateness of an

individualized education program.  Keith H.S. Peck, Esq., appeared at the hearing

on behalf of Plaintiff; Holly T. Shikada, Deputy Attorney General, appeared at the

hearing on behalf of Defendant.  After reviewing the appeal and the supporting and

opposing briefs and considering the argument of counsel, the Court **AFFIRMS** the

Hearings Officer's Findings of Facts, Conclusions of Law and Decision.

## BACKGROUND

This matter concerns the State of Hawai`i, Department of Education's ("DOE") obligation under the Individuals with Disabilities Educational Act ("IDEA"), 20 U.S.C. §§ 1400 et seq., to provide a free appropriate public education ("FAPE") to qualifying students.  Student M.D. ("Student") is a nine-year-old boy[1] eligible for special education and related services whose Home School was Wailuku Elementary School.

It is undisputed that prior to February 2009, Student participated in general education class activities[2] at the Home School, but Student's aggressive and inappropriate interaction with his peers and teachers resulted in a modification to his placement.

In or about October 2008, Student's problematic behaviors intensified at home and at school.  Student exhibited aggressive and inappropriate behaviors toward teachers and peers in several ways.  Student apparently engaged in these behaviors to gain attention from the adults in the room.  Such behavior included:

---

[1] Student's birth date is March 5, 2001.  (ROA at 3.)  At the time of the underlying due process hearing, Student was a second grader.

[2] Student participated in general education class activities for morning broadcast, lunch, recess, an after school social program, and several other classes and scheduled activities.  (ROA Tr. vol II at 110:7-18.)

2

hitting or slapping at peers in the regular education classroom on several occasions; throwing a stapler and hitting an individual on the head; scratching the eye of one of the class room paraprofessionals and periodically attempting to hurt the same eye again; knocking over furniture; and kicking, pinching, scratching, and pulling hair.

By January 2009, Student's behaviors had escalated.  Student apparently began "targeting" fragile students in the special education classroom, at one point tipping over a wheelchair and targeting the child who used that wheelchair.  Student engaged in inappropriate touching, disrobing, and public urination.  Student also began to purposefully defecate in his pants and then smear the feces, in order to gain attention.  It became difficult for Home School personnel to control Student in the environment with other general or special education students.  Accordingly, the January 23, 2009 individual education plan ("IEP") stated that Student was placed in an intensive applied behavior analysis ("ABA") program, which took place in a sel-contained classroom.

Because an attempt in January 2009 to re-integrate Student to the special education room was unsuccessful, Student's February 24, 2009 IEP called for further implementation of the ABA program.  The ABA program took place in a separate, self-contained room on campus with individual attention and

monitoring.  Because of his aggressive behavior, Student was not to participate

with peers.  Student was not to attend home room, all academic subjects, Hawaiian

studies, physical education, music, library, field trips, assemblies, recess, or lunch.

On March 13, 2009, Parents informed the Home School that they

intended to place Student at Horizons Academy ("Private School") because they

were unhappy with what they considered to be Student's overly restrictive

placement at the Home School.  On March 20, 2009, Parents unilaterally removed

Student from the Home School to the Private School.  (Opening Br. at 5.)

After Parents sent the letter but before they removed Student from the

Home School, at the March 17, 2009 IEP meeting, the IEP team determined that

Student could begin a gradual re-integration to the after school social program with

his peers.  In other respects, Student was required to remain separate from the

general education students.  Plaintiffs contend that as of March 20, 2009, they had

been unaware that Student might be partially reintegrated at the Home School.

Plaintiffs might not have removed Student had they known.  (Id.)

On April 9, 2009, Plaintiffs filed a Request for Impartial Hearing.

(ROA at 1.)  Plaintiffs objected to the March 17, 2009 IEP on the grounds that it

did not place Student in the least restrictive environment.  Plaintiffs believed that

the IEP would result in the loss of appropriate socialization benefits and social

4

skills.  (Id. at 5.)  Specifically, Plaintiffs alleged that: (1) the IEP did not define

Student's placement; (2) placement was not the LRE; (3) 360 minutes per day of

special education services was insufficient and did not include Student's after

school program; (4) the IEP did not identify what portion of Student's 810 minutes

per quarter of speech/language services would be individual or group services; and

(5) the IEP did not provide supplementary aides, services, program modifications,

or supports for personnel to address Student's sign language needs.  (Id. at 3-5.)

An administrative hearing was held before Hearings Officer Haunani

Alm on June 3, 4, and 5, 2009.  On July 22, 2009, Hearings Officer Alm issued her

Findings of Fact, Conclusions of Law, and Decision.  (Id. at 116-132.)  She found,

inter alia, that the March 17, 2009 IEP did offer Student FAPE.  (Id. at 132.)

Plaintiffs timely filed an appeal of Hearings Officer Alm's decision on

August 20, 2009.[3]  (Doc. # 1.)  Plaintiffs claim that, contrary to Hearings Officer

Alm's decision, the March 17, 2009 IEP failed to place Student in the LRE; failed

to provide Student with sufficient special education services; failed to identify the

frequency of speech and language services by creating an "illusory offer" of the

service; and failed to identify the required supplementary aids, including Student's

---

[3]  Patricia Hamamoto was sued in her official capacity as Superintendent. Hamamoto is no longer Superintendent and has been replaced in this action by Interim Superintendent Kathryn Matayoshi**.**

need for an aide with sign language knowledge.  (Id. at 5.)  Plaintiffs request

reimbursement for the costs of privately obtained education services, and

attorneys' fees and costs.  After transmittal of the administrative record, Plaintiffs

filed their Opening Brief on March 8, 2010.  (Doc. # 20.)  DOE filed its Reply

Brief on April 8, 2010.  (Doc. # 21.)

       Meanwhile, as this case was pending before Hearings Officer Alm, a

second administrative complaint was filed by Plaintiffs regarding a revised IEP

dated June 22, 2009.  (Opening Br. at 2.)  Although the second administrative

hearing has not been appealed to this Court, Plaintiffs attach to their Opening Brief

Hearings Officer Richard Young's decision, as context.  (Opening Br. Ex. 1.)  In

the Findings of Fact, Conclusions of Law and Decision filed January 6, 2010,

Hearings Officer Young found that the June 22, 2009 IEP, which continued to

place Student at the Home School, did not provide Student with FAPE.  (Id. at 18.)

Hearings Officer Young found that Student's placement at the Private School was

the appropriate placement for Student for the 2009-2010 school year.  Plaintiffs

were granted reimbursement for the costs of placement at the Private School for the

2009-2010 school year.  Hearings Officer Young's decision on the second

administrative complaint was filed after the instant action was appealed to this

Court.

According to Plaintiffs, placement at the Private School as ordered by Hearings Officer Young in the second administrative hearing was the remedy which Plaintiffs sought in both hearings.  Therefore, in the instant appeal, Plaintiffs seek only reversal of Hearings Officer Alm's determination and reimbursement of costs accrued for the Private School from April 9, 2009 until July 28, 2009, and attorneys' fees.

## STANDARD OF REVIEW

The IDEA states in part:

> [any party aggrieved by the findings and decision made [pursuant to an administrative hearing], shall have the right to bring a civil action with respect to the complaint presented pursuant to this section, which action may be brought in any state court of competent jurisdiction or in a district court of the United States, without regard to the amount in controversy.

20 U.S.C. § 1415(i)(2)(A).

When a party files an action challenging an administrative decision under the IDEA, a district court "(i) shall receive the records of the administrative proceedings; (ii) shall hear additional evidence at the request of a party; and (iii) basing its decision on the preponderance of the evidence, shall grant such relief as the court determines is appropriate."  20 U.S.C. § 1415(i)(2)(C); see also Ojai Unified Sch. Dist. v. Jackson, 4 F.3d 1467, 1471 (9th Cir. 1993).  The party

challenging the administrative decision bears the burden of proof.  See Seattle Sch.

Dist., No. 1 v. B.S., 82 F.3d 1493, 1498 (9th Cir. 1996); Hood v. Encinatas Union

Sch. Dist., 486 F.3d 1099, 1103 (9th Cir. 2007).

"[J]udicial review in IDEA cases differs substantially from judicial

review of other agency actions, in which courts generally are confined to the

administrative record and are held to a highly deferential standard of review." Ojai

Unified Sch. Dist., 4 F.3d at 1471.  District courts have discretion concerning how

much deference to give to state educational agencies.  Gregory K. v. Longview

Sch. Dist., 811 F.2d 1307, 1311 (9th Cir. 1987).  Courts need not follow the

traditional test that findings are binding if supported by substantial evidence or

even a preponderance of the evidence.  Id.  A court may not, however, simply

ignore the administrative findings.  Ojai Unified Sch. Dist., 4 F.3d at 1474.  Given

the expertise of the administrative agency and the political decision to vest the

initial determination with the agency, deference to the hearing officer is warranted

in cases where the officer's findings are "careful and thorough."  Id. (citing

Kerkam v. McKenzie, 862 F.2d 884, 887 (D.C. Cir. 1988)); Capistrano v. Unified

Sch. Dist. v. Wartenberg, 59 F.3d 884, 891 (9th Cir. 1995).  In the end, district

courts are free to determine how much deference to accord decisions of a hearing

officer in light of the circumstances.  <u>County of San Diego v. Cal. Spec. Educ.</u> <u>Hearing Office</u>, 93 F.3d 1458, 1466 (9th Cir. 1996).

<u>DISCUSSION</u>

Because Student is currently placed at the Private School, Plaintiffs now seek only reimbursement of costs accrued for the Private School from April 9, 2009 until July 28, 2009, where Student was unilaterally placed by Parents after the March 17, 2009 IEP.  (Opening Br. at 2-3.)

The March 17, 2009 IEP is the subject of this appeal.  This IEP provided Student with: (1) 360 minutes per school day of special education services, which included a special education teacher, two paraprofessionals, and a behavior instructional student support professional at all times; (2) after school program of 150 minutes each school day; and (3) speech therapy services for 810 minutes per quarter.  (ROA Resp't Ex. 6.)  The IEP clarifies that Student was placed in a self-contained classroom and would be "re-integrated into general population as he is able."  (<u>Id.</u> at 11.)  Furthermore, the speech therapy sessions consisted "primarily of individual direct therapy sessions, with group therapy sessions introduced as behavior improves."  (<u>Id.</u>)

Plaintiffs raise substantive objections to each of these elements of the IEP, and dispute Hearings Officer Alm's conclusion that the IEP provided Student

9

with FAPE.[4]  The Court will review each objection in turn.  The adequacy of the March 17, 2009 IEP and Hearings Officer Alm's decision must be evaluated by this Court based on the record available at that time, and not on the subsequent June 22, 2009 IEP which was the subject of Hearings Officer Young's decision.

A.      Frequency of Special Education Services

Plaintiffs argue that the 360 minutes per day allocated by the IEP to special education was inadequate, because the IEP did not direct special education services for the after school program.  (Opening Br. at 11.)  Plaintiffs contend this violated the "extended school year" provisions of 34 C.F.R. § 300.106(b) and § 300.320(a)(7).  Section 300.320(a)(7) requires that the IEP identify "the anticipated frequency, location, and duration of those [special education] services and modifications."  The IEP was, according to Plaintiffs, facially deficient.

Plaintiffs' argument, however, presumes that Student actually required special education services in the after school program.  Plaintiffs have submitted no evidence suggesting this was so.  One cannot expect the IEP to provide the "frequency, location, and duration" of special education in after school care services if no such services were provided or required.

---

[4] With the exception of the sign language provisions in the IEP, Plaintiffs do not appear to raise any procedural objections to the IEP.

Hearings Officer Alm concluded that Plaintiffs had not provided sufficient evidence to show that Student required additional minutes of special education.  (ROA at 129.)  Hearings Officer Alm did not cite to any particular witness or evidence when reaching this decision, however, this is reasonable considering that one basis for this conclusion is the <u>absence</u> of evidence.  The Court's own review of the record and transcript corroborates Hearings Officer Alm's conclusion.  There is no testimony on file indicating that additional minutes per day were required or recommended beyond the 6 hours per day Student was receiving.  To the contrary, the testimony indicates that the after school program director who creates the program for each student has dual certificates in special education and implements the program to make sure the goals and objectives of each individual student are met.  (ROA Tr. vol. II at 207:1-18 & 215-16.)

Accordingly, Hearings Officer Alm did not err in concluding that the frequency of Student's special education services was adequate.

B.      <u>Speech Therapy and Sign Language Services</u>

Plaintiffs object to both the speech therapy and sign language services as provided in the IEP.

1.   <u>Speech Therapy Services</u>

The IEP called for 810 minutes per quarter of speech therapy sessions consisting "primarily of individual direct therapy sessions, with group therapy sessions introduced as behavior improves." (ROA Resp't Ex. 6 at 11.) In other words, Student was to receive individual therapy sessions until his behavior improved such that he might receive therapy in a group. Plaintiffs object because the IEP did not indicate what percentage of the 810 minutes would be dedicated to individual services versus group services. (Opening Br. at 12-13.)

Plaintiffs do not submit any law, and the Court is unaware of any, that requires the DOE to state a particular percentage of time to be dedicated to either individual or group services. Plaintiffs rely solely on a comment made by Sue Lee, Student's speech pathologist, indicating that she would provide Student's speech therapy services as "direct services." (Opening Br. at 14; ROA Tr. vol. II at 151:19-25 & 152:1-8.) In Lee's testimony, however, these "direct services" were distinguished from other services such as observation and collaboration; they did not necessarily distinguish between "individual" or "group."[5]

---

[5] Lee stated that it would not have been appropriate to "use only 400 or 450 of those minutes as direct therapy and the rest as observation, collaboration, things like that." (ROA Tr. vol. II at 151:19-21.)

Lee's testimony indicates that any "group" therapy may still be "direct" therapy.  Lee explained that "group therapy would be one other additional student . . . that could be a good role model for [Student] and they could, you know, communicate as a peer."  (ROA Tr. vol. II at 147:14-18.)  When asked whether she would still be providing direct therapy with those two individuals, Lee responded affirmatively.  (Id. at 147:19-21.)  Plaintiffs, therefore, mischaracterize the program when Plaintiffs contend that only a portion of the therapy would be necessarily direct and the remainder be indirect.

It is also difficult to discern what Plaintiffs' actual grievance is, as presumably Plaintiffs would want Student to progress to the point where he may receive speech therapy in a group.  Reintegrating Student with his peers was, after all, Plaintiffs' main purpose in filing the administrative appeal.

The Court concludes that Hearings Officer Alm correctly analyzed the requirements for speech services under the IDEA.  The IDEA and corresponding regulations require that the IEP include a statement of the special education and related services, annual goals, a statement of the program modifications or supports, the projected date for beginning the services, and the frequency, location, and duration of those services.  20 U.S.C.

§ 1414(d)(1)(A)(i)(I)-(VIII); 34 C.F.R. § 300.320(a).  As Hearings Officer Alm carefully noted, all these components are included in the IEP.  (ROA at 130-131.) There is no additional requirement that the relative percentage of "individual" versus "group" therapy be included in the IEP.  See 20 U.S.C. § 1414(d)(1)(A)(ii) ("Nothing in this section shall be construed to require -- that additional information be included in a child's IEP beyond what is explicitly required in this section."). Particularly in this instance, such a rigid demarcation would be counterproductive because Student required a flexible response to address his problematic interactions with his peers.

2.    Sign Language Services

Student's primary mode of communication is sign language.  As noted by Plaintiffs, the witnesses agreed that Student needs to communicate with his aides and teachers in sign.

According to Plaintiffs, the IEP does not include supplemental Aides, services, program modification, and support to address Student's sign language needs.  (Opening Br. at 14-16.)  Because the IEP failed to identify Student's sign language needs, Plaintiffs argue, the IEP failed to address a critical aspect of his program.  (Id. at 15.)

14

Contrary to Plaintiffs' argument, the IEP does in fact note Student's

reliance on sign language in several places.  In particular, under the subheading

"Communication," the IEP not only documents Student's reliance on signing, but

identifies proficiency in signing as a goal:

> [Student] continues to use Signed Exact English, but also vocalizes,
> uses pictures, eye contact, facial expressions, and gestures.  <u>Signing is
> his preferred method of communication</u>.  Signing vocabulary is quite
> extensive and continues to grow everyday.  He consistently signs two
> word phrases.  He is capable of signing up to three to four routine
> phrases.
> . . .
> [Student's] [k]nowledge and use of functional receptive and
> expressive vocabulary needs to increase.  Signed utterance length
> needs to increase.  <u>The goal is for [Student] to independently use sign
> language</u>.

(ROA Resp't Ex. 6 at 3 (emphasis added).)

Plaintiffs contend that because the IEP does not expressly require the

paraprofessionals and adult supports to have knowledge of sign language, the IEP

fails both procedurally and substantively.  Procedurally by not allowing parents to

participate in developing the IEP, and substantively because the program was not

reasonably calculated to confer educational benefit.

Plaintiffs' arguments are without merit.  Regarding the substantive

requirement, the IEP expressly identifies that "independence" with sign language is

a goal.  It therefore follows that the services provided to Student must be designed

to reach that goal, and if the services are not designed to achieve independence, then there might be a substantive violation.  The IEP is not, however, required to expressly list all the various skills that each teacher or aid must possess in order to help Student reach those goals.  Plaintiffs do not submit any law standing for the proposition that the qualifications of the staff and teachers must be listed in the IEP.  To the contrary, as discussed above, the IDEA identifies the specific items to be included in an IEP, and staff qualifications is not one of those items.

Regarding the procedural requirements, Plaintiffs do not elaborate on how Parents were barred from participating in the process.  The procedural safeguards which may give raise to a procedural complaint are found at 20 U.S.C. § 1415(b).  The statute describes several procedural protections such as: (1) an opportunity for parents to examine all records and obtain an independent evaluation of the child (§ 1415(b)(1)); (2) written notice to the parents whenever there is a proposal to change the IEP (§ 1415(b)(3)); and (3) the right of the parent to present a complaint with respect to the eligibility of the child for services or regarding his or her IEP (§ 1415(b)(6)).  Plaintiffs do not identify which of these three protections, or any others, were allegedly violated.  Plaintiffs may not simply rest on their bald assertion that Parents did not participate.  There is no evidence in

16

the record that Parents did not have an opportunity to examine records, obtain an

independent evaluation, or did not receive written notice of proposed changes.

Moreover, the record shows that the paraprofessionals and staff were,

in fact, trained in sign language.  Sandrina Redfearn testified that staff were

provided with sign language classes by a certified deaf education teacher.  (ROA

Tr. vol. II at 263-64.)  Kristen Koba-Burdt testified that staff were trained in sign

language specifically for working with Student.  (ROA Tr. vol. III at 438:13-24.)

For these reasons, the Court affirms Hearings Officer Alm's

conclusion on this issue.

C.      Least Restrictive Environment ("LRE")

The March 17, 2009 IEP called for Student to be placed in a self-

contained classroom, to be "re-integrated into general population as he is able."[6]

(ROA Resp't Ex. 6 at 11.)  Plaintiffs object on the grounds that Student was placed

in a self-contained classroom without an explicit guarantee that Student would be

reintegrated in the classroom with other students.  Parents believe that the IEP, as

_____

[6] At the hearing on this matter, Plaintiffs' counsel argued that Hearings Officer Alm found that Student would be permanently isolated.  This Court finds that the IEP did not create such a rigid plan, and instead provides flexibility to re-integrate Student was possible.  Whether Hearings Officer Alm correctly analyzed this element is not dispositive to this Court's review, because as set forth below, the Court is not granting Hearings Officer Alm's LRE findings deference.

17

worded, would not actually allow Student to be re-integrated until an entirely new IEP was created.  Plaintiffs further believe that, because the IEP team acknowledged that Student would benefit from reintegration, and because staff testified that they would begin reintegrating Student slowly, the IEP was more restrictive than Student's actual placement and therefore must not provide the LRE. The IEP must, they argue, fail to provide FAPE.  (Opening Br. at 3,4, 9.)  Because Parents did not believe the IEP guaranteed reintegration, they unilaterally removed Student from the Home School to the Private School.  (Id. at 5, 9.)

As evidence that the March 17, 2009 IEP would not actually allow reintegration, Plaintiffs point to the testimony of Lesley Alexander, a DOE witness, who stated that a new IEP would be required to change the LRE and reintegrate Student.  (ROA Tr. vol. III at 506:5-12).  Plaintiffs argue that the IEP does not establish Student's right to reintegrate with this peers.

The IDEA requires that "to the maximum extent appropriate" students with disabilities

> are educated with children who are not disabled, and special classes, separate schooling, or other removal of children with disabilities from the regular educational environment occurs only when the nature or severity of the disability of a child is such that education in regular classes with the use of supplementary aids and services cannot be achieved satisfactorily.

18

20 U.S.C. § 1412(a)(5)(A).  Known as "mainstreaming" or the "least restrictive environment" ("LRE"), this provision is designed to indicate a strong preference within the IDEA for educating handicapped with nonhandicapped children as much as possible.  See Board of Education v. Rowley, 458 U.S. 176, 181 n.4 (1982); id. at 202 ("The Act requires participating States to educate handicapped children with nonhandicapped children whenever possible.").

The Ninth Circuit has adopted a four-factor balancing test to determine whether a district's placement offers education in the LRE: (1) the educational benefits of placement full-time in a regular class; (2) the nonacademic benefits of such placement; (3) the effect the student has on the teacher and other students in the regular class; and (4) the cost of mainstreaming the student. Sacramento City Unified Sch. Dist., Bd. of Educ. v. Rachel H. ex rel. Holland, 14 F.3d 1398, 1404 (9th Cir. 1994); see also Ms. S. ex rel. G. v. Vashon Island School Dist., 337 F.3d 1115, 1136-37 (9th Cir. 2003), superseded by statute on other grounds by Individuals with Disabilities Education Act Amendments of 1997, Pub.L. No. 105-17, 111 Stat. 37 (1997).

In this instance, it is acknowledged that Student would benefit from integration with his peers, but the effect Student had on the teachers and other students in the regular class was highly problematic.  Student was an actual danger

19

to his fellow students and to himself.  It is undisputed that Student had physically

attacked other students and staff on several occasions.  The fact that Student was

isolated from his peers is not, itself, indicative that he was not provided with the

LRE.

      At this juncture this Court may look only at the events leading up to

the March 17, 2009 IEP.  At that point in time, it had been only <u>three weeks</u> since

the February 24, 2009 IEP that had placed Student in a self-contained classroom.

It was after this short three-week period that Parents unilaterally relocated Student

to the Private School.

      There is some evidence[7] that Student had progressed in the self-

---

[7] Review of Hearings Officer Alm's conclusion is of little use to this Court, as it does not cite to the particular witness, evidence, or portion of transcript upon which she concludes that Student had made substantial progress while in the self-contained classroom at the Home School.  Although Hearings Officer Alm laid out a detailed factual background, there is no reference to the evidence she actually relied upon in her conclusion as to LRE.  (ROA at 127-29.)  It is therefore difficult for this Court to determine how much, if any, deference to afford Hearing Officer Alm's decision on this matter.  In light of these circumstances, this Court will not afford Hearings Officer Alm deference on this matter.  <u>See</u> <u>County of San Diego v. Cal. Spec. Educ. Hearing Office</u>, 93 F.3d 1458, 1466 (9th Cir. 1996).

At the hearing on this matter, Plaintiffs' counsel disputed Hearings Officer Alm's factual findings as to when Student was actually transferred to the Private School, either March 13, 2009 or March 20, 2009.  The Court's review of Hearings Officer Alm's factual findings does not bear out counsel's claims.  Hearings Officer Alm found that Parents had sent a letter on March 13, 2009, not that Parents had removed Student from the Home School on March 13.  (ROA at 124.)

(continued...)

contained environment during the three weeks.  As noted above, the IEP team had discussed reintegrated Student with peers, albeit in a limited manner.

The primary evidence in the record showing that Student was making progress in DOE's placement is the testimony of Sandrina Redfearn, autism consulting teacher for DOE on Maui.  Redfearn testified that Student was "making a lot of progress" and that the teachers were "actually at the point where we were beginning to have him start participating with peers again in the last environment where he had success prior to being fulling self-contained, which was the social program.  So we have begun having him go to the social program for a short period of time."  (ROA Tr. vol. II at 271: 13-19.)  Redfearn, an autism consulting teacher and former special education teacher for sixteen years, is a credible witness on these matters.  Based on this testimony, it appears that the IEP team was following through on precisely what the IEP ordered, which was to re-integrate Student as he was able.

To counter Redfearn's testimony, Plaintiffs point to Student's progress in the Private School's group-setting.  A May 17, 2009 evaluation by Plaintiffs' expert, Dr. Draeger, noted Student's progress while at the Private

---

[7](...continued)
In any event, these two particular dates did not form the crux of Hearings Officer Alm's decision and do not appear to be a material issue.

School.  (Opening Br. Ex. 2.)  According to Dr. Draeger: "Family reports are that

at least the first six weeks at [the Private School] have gone much better, with a

smaller environment using successful engagement in preference to separation for

safety concerns.  Of course, long term benefit from this setting is not known yet."

(Id. at MD 048.)  Dr. Draeger also concluded that "[Student] is not likely to benefit

from separation as a method of changing his behavior," and that the Private School

may be "an appropriate placement."  (Id. at MD 050.)

        The evidence contradicting Redfearn's review of Student's progress

is, therefore, a report conducted nearly nine weeks after the March 2009 IEP

meeting.  Dr Draeger's report was clearly not available at the time the March IEP

was created.  Additionally, the analysis refers to six weeks of private schooling

which would have taken place after the March IEP meeting.  Moreover, although

Dr. Draeger's evaluation was completed prior to the administrative hearing, it is

not apparent to this Court that Dr. Draeger's evaluation was actually submitted by

Plaintiffs to Hearings Officer Alm for consideration.  No mention of the report is

made in Hearings Officer Alm's decision.  The parties do not mention it in their

administrative briefings.  It is therefore of little relevance to whether the March

IEP was proper.

Based on the foregoing and the Court's review of the record, the Court finds that, during the time period at issue on appeal, the DOE provided Student with LRE.

The Court further concludes that the March 17, 2009 IEP did provide FAPE.  A FAPE must be tailored to the unique needs of the disabled child by means of an IEP.  Board of Educ. of Henry Hudson Central Sch. Dist. v. Rowley, 458 U.S. 176, 181 (1982); see 20 U.S.C. § 1401(14) (an IEP is "a written statement for each child with a disability that is developed, reviewed, and revised in accordance with section 614(d).").  A FAPE need not be the superlative or "potential-maximizing" education program.  Instead, states are only obligated to provide a basic floor of opportunity through a program individually designed to provide educational benefits to the disabled child.  See Seattle Sch. Dist., No. 1, 82 F.3d at 1498; Ash v. Lake Oswego Sch. Dist., 980 F.2d 585, 587 (9th Cir. 1992).  The "basic floor of opportunity" provided by the IDEA consists of access to specialized instruction and related services, see Seattle Sch. Dist., No. 1, 82 F.3d at 1500 (quoting Rowley, 458 U.S. at 201), and must be more than a program that produces some minimal academic advancement, which might be only trivial.  Amanda J. v. Clark County Sch. Dist., 267 F.3d 887, 890 (9th Cir. 2001).

The Court disagrees with Plaintiffs' interpretation of the March 17, 2009 IEP.  The IEP said that Student would integrate when he was able to.  This IEP properly took into account his behaviors toward his peers.  Whether Student's progress would improve such that an IEP could  modify his placement to be permanently with the general student population is a question for a later time, and does not necessarily mean that the March 2009 IEP itself deprived Student of FAPE.  To the contrary, the evidence shows that the teachers were in fact planning on integrating Student when possible.  Considering the record and the evidence actually available at the time of this first administrative hearing, the Court concludes that the March 17, 2009 IEP was reasonably calculated to ensure Student received educational benefits.  It appeared to staff that progress was being made, and there is no direct evidence contradicting this opinion.

The Court is aware that Hearings Officer Young made a contrary decision regarding the June 22, 2009 IEP, and determined at that time that the Private School was the appropriate placement for Student.  That conclusion, however, was made with several more months of data to evaluate Student's progress.  That conclusion does not obviate this Court's obligation to determine, independently, DOE's compliance with IDEA on March 17, 2009.

The Court acknowledges Parents' laudable wish to have the very best services provided to their child. This Court's own ruling, however, is bound by the actual terms of the IDEA, which do not require the "best" services, but rather, a FAPE that provides access to specialized instruction and related services and produces more than merely minimal academic achievement. See Seattle Sch. Dist., No. 1, 82 F.3d at 1500 (quoting Rowley, 458 U.S. at 201). According to Redfearn, Student's progress had been more than minimal during this time period. Moreover, at the time of the March IEP, Student was still engaging in behaviors inappropriate for other students, and therefore a firm time frame in which Student would be completely reintegrated with his peers would have been unreasonable and impracticable.

Accordingly, the Court concludes that the March 17, 2009 IEP was adequate and provided Student with FAPE.

<u>CONCLUSION</u>

For the reasons stated above, the Court AFFIRMS the Administrative

Hearings Officer's Findings of Facts, Conclusion of Law and Decision.

IT IS SO ORDERED.

DATED:  Honolulu, Hawaii, May 17, 2010.



_____
David Alan Ezra
United States District Judge

<u>C.P. et al. v. Department of Education</u>, CV No. 09-00393 DAE-BMK; ORDER
AFFIRMING ADMINISTRATIVE HEARINGS OFFICER'S FINDINGS OF
FACTS, CONCLUSIONS OF LAW AND DECISION